FILED

08 JUN 16 AM 11:39

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: ___cp___  DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> ) <br> v. ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> MICHAEL KRAPCHAN (1), ) <br> HASSAN SHIRANI (2), ) <br> RYAN WEDDING (3), ) <br> ) <br> Defendant. ) | Criminal Case No. **'08 MJ 1856** <br><br> **C O M P L A I N T** <br><br> Title 21, U.S.C., Secs. 841(a)(1) and 846 - Conspiracy to Possess Cocaine with Intent to Distribute and to Distribute Cocaine. |

ORIGINAL

The undersigned complaint, based upon the attached affidavit, and being duly sworn:

### Count 1

Beginning on a date unknown and continuing up to and including June 13, 2008, within the Southern District of California, and elsewhere, defendants MICHAEL KRAPCHAN, HASSAN SHIRANI, RYAN WEDDING

did knowingly and intentionally conspire and agree with each other and with others known and unknown, to possess with the intent to distribute and to distribute 5 kilograms and more of cocaine, to wit: approximately 24 kilograms of cocaine, a Schedule II Controlled Substance in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

_____
Brett Kalina
Special Agent
Federal Bureau of Investigation


Sworn before me and subscribed in my presence, June _16, 2008_, 2008

_____
U.S. Magistrate Judge

ORIGINAL

## AFFIDAVIT

I, Brett Kalina, being duly sworn, hereby declare and state as follows:

1. I have been employed as an FBI Special Agent since June 2004. I am currently assigned to the San Diego Field Division, Organized Crime Squad, and have been since July 2006. Prior to my assignment to the Organized Crime Squad I was assigned to the Major Mexican Drug Task Force Squad for two years. During the investigation of organized Crime I have participated in the investigation of numerous drug related offenses. Additionally received sixteen (16) weeks of formalized training at the FBI Academy in Quantico, Virginia, where I became familiar *inter alia* with how controlled substances are consumed, manufactured, packaged, marketed and distributed. As a Special Agent of the FBI, I have participated in several narcotic investigations of alleged criminal violations of the Controlled Substances Act. I have participated in narcotic investigations and have conducted numerous surveillance operations in connection with narcotic investigations. I am familiar with the operations of illegal drug trafficking organizations in the United States and Mexico, including those organizations whose operations involve the distribution of wholesale quantities of marijuana, cocaine and methamphetamine.

2. I make this affidavit in support of a criminal complaint and arrest warrant against:

   a. Michael Krapchan,
   b. Hassan Shirani,
   c. Ryan Wedding,

for violation of Title 21, United States Code, Sections 846, conspiracy to possess with the intent to distribute cocaine.

3. The information set forth below is based on my personal knowledge and/or information communicated to me from other law enforcement officers involved in the investigation of the aforementioned individuals.

4. Because this affidavit is being submitted for the limited purpose of seeking a criminal complaint for the above listed individuals, I have not set forth each and every fact learned during the course of this investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause for the issuance of the requested criminal complaint.

5. The FBI has been investigating the money laundering and drug distribution activities of Elmar Akhundov, the leader of the Akhundov drug trafficking organization ("Akhundov DTO") the Akhundov DTO is based in Vancouver, Canada. As described in greater detail below, Michael Krapchan ("KRAPCHAN") Hassan Shirani ("SHIRANI") and Ryan Wedding ("WEDDING") are Akhundov DTO associates.

6. During the months prior to June 13, 2008, an FBI confidential source ("CS-1") met with Akhundov and KRAPCHAN regarding the purchase of cocaine. These negotiations were recorded and occurred over the telephone and in person, in locations that included, but were not limited to, Seattle, Washington and San Diego, California.

7. Pursuant to these negotiations, over recorded telephone conversations, Akhundov and KRAPCHAN agreed to travel to San Diego, California on or about June 9, 2008 to purchase 24 kilograms of cocaine from CS-1. However, on June 10, 2008, agents learned that Akhundov would not be present to complete the previously negotiated transaction. Rather, the DTO unilaterally altered the previously negotiated plan and CS-1 subsequently met only with KRAPCHAN and DTO associates SHIRANI and WEDDING.

8. Like KRAPCHAN, SHIRANI and WEDDING traveled to California from Canada. On June 10, 2008, KRAPCHAN introduced SHIRANI and WEDDING as the sources of supply of the money which the DTO intended to use to purchase the previously negotiated amount of cocaine. During recorded conversations between KRAPCHAN, SHIRANI, WEDDING and CS-1, SHIRANI and WEDDING both explained to CS-1 that the buy-money was not instantly available upon their arrival at the Los Angeles International Airport.

   a. Specifically, WEDDING told CS-1 that they [WEDDING and SHIRANI] understood that the "deal" [drug transaction] would not occur in Los Angeles, but that is where the "paper [buy money] was located. WEDDING explained that if they had known that the "deal" would occur immediately upon arrival they would have arrived a few days earlier. WEDDING stated that the money was in Los Angeles waiting for "us" [WEDDING and SHIRANI], but that they just had to pick it up. WEDDING then stated, "Obviously, I didn't put "it" [the buy money] in my [ui]suitcase."

   b. WEDDING also stated that their [WEDDING's and SHIRANI's] intention was to "grab one" [kilogram of cocaine] and "have a look at it . . . and grab the rest of them later." SHIRANI subsequently stated that "[W]e [WEDDING and SHIRANI] cannot carry money over the border" and stated that they had to get the money to Los Angels before they arrived in Los Angeles.

9. On June 11, 2008, during a recorded telephone conversation between SHIRANI and CS-1, SHIRANI described how he intended the pending drug transaction to occur. SHIRANI stated that he would give CS-1 money for "two" [kilograms of cocaine]. SHIRANI explained that once the transfer for "two" was completed then they would do another "two." SHIRANI then stated that the first transfer would be for one "car" [kilogram of cocaine] so that he [SHIRANI] can inspect the cocaine and see if it meets his expectations. Ultimately, the parties agreed to conduct the exchange on June 13, 2008.

10. On June 13, 2008, FBI agents observed KRAPCHAN, SHIRANI, and WEDDING arrive together at a San Diego Hampton Inn Hotel while driving in a 2008 Toyota Prius (Cal Lic. # 6DCW983). KRAPCHAN, SHIRANI and WEDDING entered the hotel together. A short time later, using the aforementioned Toyota, Prius, KRAPCHAN left the San Diego Hampton Inn Hotel and traveled alone to a predetermined location where the previously negotiated drug transaction was

to occur. Upon arrival, CS-1 met with KRAPCHAN, whereupon KRAPCHAN exchanged seventeen-thousand dollars for one kilogram of cocaine. KRAPCHAN opened the package given to him by CS-1 in what appeared to be an effort to identify what was contained therein. After the exchange took place, CS-1 asked KRAPCHAN to call and inform SHIRANI and WEDDING that the exchange did, in fact, take place as previously negotiated. Using his cellular telephone, KRAPCHAN placed a call to unidentified individuals [believed to be SHIRANI and WEDDING] and stated that he had in fact received the "cocaine" from CS-1. After making this telephone call, KRAPCHAN was placed under arrest.

11. After KRAPCHAN was arrested, SHIRANI and WEDDING were placed under arrest as they were leaving the San Diego Hampton Inn Hotel. During a subsequent search of the aforementioned Toyota, Prius agents located *inter alia*:

1) a credit card type hotel key for Comfort Inn with the number "304" written upon it;

2) a vehicle rental agreement in the name of "Ryan Wedding" with SHIRANI's signature listing SHIRANI as an additional driver; and

3) a real estate magazine for the San Fernando Valley area.

The management at the Comfort Inn located at 20157 Ventura Boulevard, Woodland Hills, CA 91364, confirmed that room #304 was registered to WEDDING.

12. Pursuant to a search warrant issued in the Central District of California, agents from the FBI searched Room #304. Hidden within a piece of the hotel room's furniture, agents located approximately $100,000.00 of United States currency.

13. Based on the information set forth above, I believe that there is probable cause to believe that KRAPCHAN, SHIRANI and WEDDING conspired to possess, with the intent distribute, 24 kilograms of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

Brett Kalina
Special Agent
Federal Bureau of Investigation

Sworn before me and subscribed in my presence, June __16__, 2008

United States Magistrate Judge

to occur. Upon arrival, CS-1 met with KRAPCHAN, whereupon KRAPCHAN exchanged seventeen-thousand dollars for one kilogram of cocaine. KRAPCHAN opened the package given to him by CS-1 in what appeared to be an effort to identify what was contained therein. After the exchange took place, CS-1 asked KRAPCHAN to call and inform SHIRANI and WEDDING that the exchange did, in fact, take place as previously negotiated. Using his cellular telephone, KRAPCHAN placed a call to unidentified individuals [believed to be SHIRANI and WEDDING] and stated that he had in fact received the "cocaine" from CS-1. After making this telephone call, KRAPCHAN was placed under arrest.

11. After KRAPCHAN was arrested, SHIRANI and WEDDING were placed under arrest as they were leaving the San Diego Hampton Inn Hotel. During a subsequent search of the aforementioned Toyota, Prius agents located *inter alia*:

1) a credit card type hotel key for Comfort Inn with the number "304" written upon it;

2) a vehicle rental agreement in the name of "Ryan Wedding" with SHIRANI's signature listing SHIRANI as an additional driver; and

3) a real estate magazine for the San Fernando Valley area.

The management at the Comfort Inn located at 20157 Ventura Boulevard, Woodland Hills, CA 91364, confirmed that room #304 was registered to WEDDING.

12. Pursuant to a search warrant issued in the Central District of California, agents from the FBI searched Room #304. Hidden within a piece of the hotel room's furniture, agents located approximately $100,000.00 of United States currency.

13. Based on the information set forth above, I believe that there is probable cause to believe that KRAPCHAN, SHIRANI and WEDDING conspired to possess, with the intent distribute, 24 kilograms of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

Brett Kalina
Special Agent
Federal Bureau of Investigation

Sworn before me and subscribed in my presence, June 15, 2008 @ 6:30 pm

United States Magistrate Judge

# COVER SHEET
## Weekend Probable Cause Determination

---

TO: DUTY MAGISTRATE JUDGE

Fax Number:

Total Number of Pages, Including Cover Sheet: __6__

Attachments: (1) Unsigned proposed complaint (charging document)
(2) Probable Cause Statement signed by the agent

---

From: Special Agent/Inspector __BRETT KALINA__

Agency: __FBI__

Pager: _____   Phone Number: _____

Date/Time of Fax to Magistrate Judge: __1:45 PM__

Returned Fax Number _____

---

Defendant(s) Name(s): __MICHAEL KCAPCHAN; HASSAN SHIRANI; RYAN WEDDING__

Date/Time of Apprehension: __JUNE 13, 2008 at 4:30 PM.__