```
 1                      States united District Court

 2                      Southern District of California

 3

 4   UNITED STATES OF AMERICA,      )
                                    )
 5                 Plaintiff,       )
                                    )
 6      vs.                         ) Case No. 08-CR-2386 JM
                                    ) Status Hearing
 7   MICHAEL KRAPCHAN,              )
     RYAN WEDDING,                  )
 8                                  )
                       Defendant.   ) Friday, December 19, 2008
 9   _____)

10
                  Before the Honorable Jeffrey T. Miller
11                     United States District Judge

12

13   Appearances:

14   For the Plaintiff:       Karen Hewitt
                              UNITED STATES ATTORNEY
15                            Orlando Gutierrez
                              ASSISTANT U.S. ATTORNEY
16                            880 Front Street, Suite 6293
                              San Diego, CA   92101
17
     For the Defendants:      Michael Pancer, Esq.
18                            LAW OFFICE OF MICHAEL PANCER
                              105 F Street, 4th Floor
19                            San Diego, CA   92101

20

21   Official Court Reporter: Debra M. Henson, CSR, RPR
                              U.S. Courthouse
22                            940 Front Street, Suite 5190
                              San Diego, CA   92101
23                            (619) 238-4538

24

25             Record produced by stenographic reporter
```

1           <u>San Diego, California - Friday, December 19, 2008</u>
2                THE CLERK:  Calling matter No. 17 of the calendar,
3    08-CR-2386, United States of America versus Michael Krapchan
4    and Ryan Wedding, on for status conference.
5                THE COURT:  Do we have all the attorneys on this
6    case?
7                MR. PANCER:  No, your Honor.  Before you call --
8                THE COURT:  Hold on, hold on.
9                MR. PANCER:  I thought I'd apprise the Court of
10   where --
11               THE COURT:  Okay.
12               MR. PANCER:  -- we stand if that's okay.  I'm not
13   sure if you even want to go forward.  I'm ready, but I'm not
14   sure the government is.  My co-counsel called me yesterday
15   and asked if I would appear for him; I said if the Court
16   would permit, I would do that.
17               THE COURT:  Does this just relate to scheduling or
18   is it something else?  Should we have these gentlemen out at
19   this point?
20               MR. PANCER:  Well, I guess -- I don't know if you
21   just want to call it.  This isn't going to be a brief matter
22   I guess is what I'm saying, but I'm happy to proceed.  Mr.
23   Gutierrez isn't here though.  I don't think this is a matter
24   someone can stand in for him on because I don't think it's
25   going to be that easy.  But I am here, and I'm ready to go.

```
 1   That's what I --
 2             THE COURT:  Where's Orlando Gutierrez?
 3             MS. MCCALL:  He is covering the calendar for Judge
 4   Sammartino.  He stopped by about 15 minutes ago and said they
 5   had two remaining matters.  He does plan to be here.
 6             MR. PANCER:  Well, I think it will end up working
 7   out that way even if we start, so it's not going to make
 8   sense.
 9             THE COURT:  All right.  I tried.
10        (There was a break in the proceedings.)
11             THE CLERK:  Recalling matter No. 17, 08-CR-2386,
12   United States of America versus Michael Krapchan and Ryan
13   Wedding, on for status conference.
14             MR. GUTIERREZ:  Good afternoon, your Honor.
15   Orlando Gutierrez on behalf of the United States.
16             THE COURT:  Thank you.
17             MR. PANCER:  Good afternoon, your Honor.  Michael
18   Pancer appearing for Mr. Krapchan and asking permission of
19   the Court to appear specially for Mr. Wedding.
20             THE COURT:  Certainly.
21             MR. PANCER:  Mr. Denis asked me to do that.
22             THE COURT:  All right.
23             MR. PANCER:  Your Honor, this was called for a
24   status.  We had filed a discovery motion.  I had understood
25   the Court had ordered the government to respond to my
```

1 discovery motion. It was -- I had therefore thought your
2 Honor was going to hear that as issues today. There is --
3 and I could set forth whenever the Court wishes -- going to
4 be a need for a further motion date.
5     THE COURT: Okay. This is what I have in my notes
6 in connection with the November 7 appearance, which was a
7 status conference then. I was told the parties would request
8 a continuance at that time, and the government indicated that
9 discovery was out, it was voluminous, and that the case was
10 moving toward possible disposition, that the parties would
11 know soon, and then we set it for today for further status.
12     MR. PANCER: Then, your Honor, we are going to
13 file -- we've prepared and I've actually already given a copy
14 of to it Mr. Gutierrez -- a very lengthy motion to dismiss
15 based on governmental misconduct. It is an oversize motion,
16 and I'm going to file that with the request that we be
17 permitted to file a motion that exceeds the local rule page
18 limit because 25 pages are devoted to a statement of facts,
19 which I needed to do to cover a two-and-a-half-year
20 government investigation. We could deal with discovery
21 issues then; however, some of the matters we're asking for
22 would impact that motion. I could give the Court some
23 examples if the Court cares for that.
24     THE COURT: Okay.
25     MR. PANCER: The government has agreed to supply in

1   their response to my motion some of the documents I
2   requested.  It is frustrating because we have asked for these
3   documents since I came into the case.  They are in the FBI
4   file; they haven't been provided yet.  Mr. Gutierrez has said
5   I would have them next week.  I would ask the Court to order
6   a date certain for these documents.  I will need them to
7   possibly beef up the motion I've already prepared.  These are
8   documents that relate to the informant that are in the FBI
9   files concerning consideration given to the informant, his
10  agreement, his past history with the FBI, and those type of
11  Giglio matters, your Honor.  Should we go one by one or --
12          THE COURT:  I don't know if that's necessary.
13  You're not telling me though that you cannot proceed with the
14  motion for dismissal based on asserted prosecutorial
15  misconduct without having the requested discovery?
16          MR. PANCER:  No.  I actually prepared a lengthy
17  motion without it.  There are matters in there that may
18  impact that which may cause me to supplement the motion, but
19  if -- assuming I'm going to have them next week, then we
20  tentatively discussed a motion date of February 20, then I
21  would just supplement my motion because it's the actions of
22  the informant, the relationship of the government to the
23  informant, are a key to this motion.  I can represent to the
24  Court it's a serious motion, I think there are serious
25  issues, there are clearly issues of entrapment.  This motion

1  will go to some of those issues, your Honor.
2             THE COURT: Mr. Gutierrez?
3             MR. GUTIERREZ: Your Honor, we're prepared to
4  respond to the motion. He did provide it early, and I've
5  spoken with the agents about it. Once it gets officially
6  filed, I would be happy to dedicate what time is necessary.
7             With regard to things that are commonly in the CI
8  file, I have absolutely no problem doing that. I don't know
9  why he's frustrated; he's been getting quite a bit of
10 discovery.
11            With regard to the ongoing settlement negotiations,
12 I will usually not discover CI information until I know for
13 sure that it's more likely than not headed to trial. As of
14 last week, we've had negotiations. I've agreed to give a
15 certain deposition various considerations, I've agreed to let
16 the defendant go back to Canada if it were up to me if they
17 do ask --
18            THE COURT: I don't need to get into the details of
19 any negotiations.
20            MR. GUTIERREZ: If I may -- I'm sorry, your
21 Honor -- but what I can tell you is that the offer will be
22 withdrawn and we'll go forward with the motions. We've tried
23 in earnest to do everything we can to negotiate, and
24 notwithstanding they rejected the last offer, we're ready to
25 go forward. So if we can have a date, your Honor -- I was

1  told by the agent that I will have the CI information by
2  Tuesday morning.  If the Court feels necessary to order a
3  date, I'm more than happy to comply with that, but I don't
4  see there would be any issues.
5          There is one issue with regard to the CI's A file
6  as the defendants has asked for a blanket copy.  That is very
7  problematic, your Honor, because it's not in my possession.
8  This is not an immigration-based case, so there's no
9  immigration agency that's working with me.  I have to request
10 it.  And there's a pending immigration matter up in LA.
11         THE COURT:  Let me separate these issues.  First of
12 all, apparently so much for the case being resolved.  I mean
13 from what I was told last time, you were moving toward
14 getting a disposition and this was going to be a status
15 conference where the progress of that could be communicated
16 to the Court, so now we're in motion practice, which is fine.
17         I think at this point, Mr. Gutierrez, you need to
18 give to Mr. Pancer what you would typically give him in terms
19 of discovery relating to confidential informants, and you
20 know what that is, you know what the standards are, so
21 anything that falls within that you should give to Mr. Pancer
22 and also to co-counsel; I'm not intending to leave Mr. Denis
23 out of this.
24         The other thing is the A File.  Just copying off
25 the entirety of the A file and giving it to the defense

 1  community is not an appropriate thing to do, Mr. Pancer.  I
 2  don't know what your request was, but if that is what it was,
 3  I would not be inclined to grant that.
 4              MR. PANCER:  All I want is documents relevant to
 5  the government's assistance in influencing his immigration
 6  status.  I don't even think we need to get them from the A
 7  file.  I served a subpoena on the informant to Mr. Gutierrez.
 8  In that informant's possession will probably be the documents
 9  that I am seeking, maybe not.  Mr. Gutierrez said he was
10  going to file a motion to quash that subpoena, and that's
11  fine; we can deal with that when he does that.  But I don't
12  think there will be an issue of accepting service, but the
13  government's going to file its own motion to quash I think,
14  and, if it's not granted, serve that document on the
15  subpoena.  I'm just trying to find out what the U.S.
16  government did, what law enforcement did to assist him in his
17  immigration status, which is the case that I've cited to.
18              THE COURT:  That's entirely fair.  There shouldn't
19  be any issue about that.  So, Mr. Gutierrez, if there is any
20  documentation relating to any assistance the government may
21  have provided to a confidential informant vis-a-vis
22  immigration status or any benefits of any kind, then that is
23  information that must be provided to the defense, as I'm sure
24  you understand.  So I think what we're dealing with now is
25  you going through the CI file, getting what needs to be

1    produced over to Mr. Pancer as soon as possible.  You should
2    probably have that A file reviewed just to make sure that
3    there's nothing in the A file that isn't in your CI file that
4    would be responsive to the request of the defense.
5              MR. GUTIERREZ:  That's been my intention, your
6    Honor.  I went through a different avenue to get it here in
7    San Diego.  I was told I could look at it, and if there's
8    anything specific I feel after my review that would need to
9    be given to me, I was going to petition the Court for a
10   specific court order to DHS, and I'm sure we could get it
11   that way.  But what I can tell you is that it's not that I've
12   been dilly-dallying, I've been making every effort to get --
13             THE COURT:  No, I'm not suggesting that you've been
14   dilly-dallying, but it is -- at this point apparently the
15   case is not going to get resolved or, if it is going to get
16   resolved, it will only be after there's been full disclosure
17   of what the defense is entitled to.  So let's get -- I'm not
18   going to give you a certain date but I will say forthwith,
19   which means just as soon as possible.  Make it a priority for
20   you; advise the people you're working with that this is a top
21   priority to get these materials over to the defense so that
22   if Mr. Pancer wants to file one motion, it will be one
23   motion, fully integrated, taking everything into account,
24   including any new points he may want to make following his
25   receipt of this additional discovery.

1      MR. GUTIERREZ:  Certainly, your Honor.

2      THE COURT:  Mr. Pancer, you may want to hold off on
3 the filing of your motion until after you get this additional
4 material, whatever is coming over.

5      MR. PANCER:  I will, your Honor.  In fairness again
6 to Mr. Gutierrez, I had a meeting as late as today with part
7 of the prosecution team to discuss disposition, and something
8 may come to fruition.  I just wanted to mention that so the
9 record is clear.

10     Your Honor, one of the things we asked for is
11 information about the informant's prior misconduct.  This is
12 an informant who worked for the KGB and then worked for the
13 military police in Kazakhstan.  We have reason to believe
14 that he ended up having a million dollars in his bank
15 accounts.  The government says they will give us any
16 information they have in their possession concerning his
17 prior criminal conduct.  I would ask the Court to order that
18 they need to discuss these issues with the informant.  It is
19 what the informant has in his possession is what the
20 government has in their possession, and they should use their
21 good offices with the informant to get to the bottom of any
22 prior criminal conduct he's been engaged in whether in this
23 country or in foreign countries because that would be
24 relevant materials to impeach the informant.  I believe it
25 exists.  I appreciate the government probably doesn't have

1   anything in their file about it.  I think they need to find
2   out if it's there and ask about it.  I appreciate they can't
3   go to Kazakhstan and ask for their files -- we don't have the
4   kind of treaty that would permit that -- but they can ask the
5   informant about it and see what he has to tell them about
6   that.  Brady has to be reduced to writing if it exists.  If
7   it exists in the mind of the informant, the government needs
8   to ferret it out and get it to us, your Honor, and they need
9   it for themselves I think before they'd want to go to trial.
10              THE COURT:  Well, Mr. Gutierrez, anything
11  Mr. Pancer has said that strikes you as inappropriate or as a
12  misstatement of your obligation?
13              MR. GUTIERREZ:  No, your Honor.  We fully intend
14  to -- for lack of a better term, we have nothing to hide.  I
15  will personally with the agent present talk to the informant
16  and ask, make inquiries.  If he says there isn't anything, I
17  think that's where my inquiry will stop at that point.  If
18  Mr. Pancer gives me other information or documentation that
19  would be contrary, I'd be more than happy to pursue that.  We
20  do not have the relevant treaty with Kazakhstan.  I made
21  inquiries, what I can do.  I know counsel has made
22  essentially a letters rogatory request in his underlying
23  motion.  I don't know how far that's gone, but I understand
24  that's a viable method for him to pursue.  But I'm more than
25  happy to do what I can as far as asking.

1        With regard to the subpoena, I think the rules of
2   evidence or in discovery, criminal discovery, adequately
3   address those things that Mr. Pancer is seeking by directly
4   attempting to serve the informant.  I will make the
5   inquiries, and I will provide everything that I possibly can.
6   It is not my intention to hide anything, but to the extent I
7   don't want to discover something, I will give it to the Court
8   ex parte and let the Court make the decision.
9        THE COURT:  Well, I don't think anyone is accusing
10  you of anything, Mr. Gutierrez, at least the -- I hope you're
11  not thinking that the Court is in any way suggesting that you
12  are holding anything back.  I don't know what your
13  communication has been with Mr. Pancer.  I know him to be
14  honorable, and I don't think he would make those kinds of
15  suggestions in any event.  You're aware of what your
16  obligations are.  There's a very interesting recent Ninth
17  Circuit case, by the way.  I don't think it was within the
18  context of a criminal case, although it was -- it involved
19  the duties of an investigating agency who had possession of
20  exculpatory material to provide that material to the
21  prosecutor as the prosecutor was prosecuting a criminal case,
22  and it comes up within the context, of all things, a federal
23  civil rights case where an individual was incarcerated for a
24  ten-year period of time, then there's a finding of factual
25  innocence, and it comes to light that the investigating

1   agency did not provide information to the prosecution team,
2   the prosecution team throws up its hands and says we don't
3   have any control over this, this was basically an
4   investigation aspect of the case, and the Ninth Circuit held
5   that does not insulate the prosecution from its obligations
6   under Brady.  And ultimately the question arose in a
7   qualified immunity context under 1983, and the Ninth Circuit
8   said qualified immunity would not protect the individual
9   state actors in that case.  Interesting case.  But I think it
10  speaks to the larger obligation.  Do you have to engage in a
11  withering cross-examination and deposition and obtain a blood
12  oath from a confidential informant that that confidential
13  informant has told you absolutely everything?  You know,
14  probably not, but I think there is a threshold obligation to
15  make reasonable inquiry to satisfy yourself, that is, for the
16  government to satisfy itself that it has obtained everything
17  that would be fairly discoverable under a Brady rationale.
18  So you've said the right things.  You've -- I don't have any
19  doubt that you're aware of your obligations and that you'll
20  continue to provide any discovery that should be forthcoming.
21           MR. PANCER:  Just to make the record clear, I'm not
22  accusing Mr. Gutierrez of anything.  I think he's an
23  honorable man.  I think he's complying with his obligations
24  as he sees it.  I don't think he's hiding anything.  My
25  concern is information he doesn't have that's in the hands of

1   the informant.  I wasn't accusing the government of anything.
2   That's one reason I issued the subpoena to the informant for
3   his bank records, for example, because I think I will find
4   the evidence of misconduct there.
5           Now, if it's still the government's -- I'd like to
6   have a clear record on, one, if the government is going to
7   move to quash the materials I requested in the subpoena that
8   I asked the government to serve on the informant and, if so,
9   then we should set a time for that.  If they're going --
10          THE COURT:  It's not ripe yet at this point,
11  Mr. Pancer.  I'm not going to have Mr. Gutierrez take a
12  position on that in front of me at this point.  The two of
13  you can continue to communicate on this, and if the
14  subpoena's not going to be honored or if there's going to be
15  a motion to quash, then that will be the case and I'll rule
16  on it.
17          MR. PANCER:  Well, this was the return date I
18  believe for the materials.  All I'm trying to find out is if
19  I'm going to deal with the government or with the informant
20  on this and if the government will serve the documents.  I
21  can't find the informant.  I wouldn't want to be looking for
22  him; that would not be appropriate.
23          THE COURT:  I don't know if it's the return date or
24  not.  All I have before me, as I indicated, was an indication
25  that the case was probably going to dispo, and we were

1  setting this date for a status date.  I understand there are
2  discovery issues.  I understand you don't have any agreement
3  yet.  I can only respond to motions that are before me,
4  formal requests, and I think that's probably the best way to
5  proceed rather than to shoot from the hip hearing what the
6  parties are telling me verbally at this time.
7           MR. PANCER:  I think that's correct, your Honor.  I
8  would have filed something except I thought the government
9  was going to have a motion to quash on file.  So I apologize
10 for that.  I'll try to work it out with Mr. Gutierrez.
11          Just one final matter.  The government has told me,
12 informed me -- and I'll just make a record of it -- that as
13 far as the Akhundov drug organization -- there have been
14 references to that in the search warrant affidavit -- that
15 that information started coming as a result of this
16 investigation through Mr. Krapchan, that there wasn't any
17 prior information about an Akhundov drug organization, and I
18 think that was the only additional matter.
19          THE COURT:  Okay.  Mr. Gutierrez, anything further?
20          MR. GUTIERREZ:  Your Honor, perhaps making a record
21 on informal discussions is not what I'm comfortable with.  If
22 counsel wants to make any discovery requests, I would prefer
23 responding and having my response in writing on the record as
24 opposed to documenting without telling me informal
25 discussions regarding representations that were made.  So if

1   I can make a record, in that regard I'd say I would no longer
2   wish to have formal -- informal discussions memorialized on
3   the record in this fashion because I haven't had a chance to
4   really -- well, never mind, your Honor.  I apologize.
5           THE COURT:  That's okay.  I'm glad we've been able
6   to make this progress today.
7           MR. PANCER:  Your Honor, this was information I
8   requested in a letter formally.  I'm told it doesn't exist.
9   I was comfortable with it.  I didn't mean to put
10  Mr. Gutierrez on the spot.  I will withdraw that remark.
11  I'll file a motion to get these materials if he --
12          THE COURT:  Try to get back to where you were
13  before the hearing --
14          MR. PANCER:  Thank you.
15          THE COURT:  -- took place.  And, look, you might
16  even end up going to Kazakhstan together.  Who knows?  This
17  could be the start of a good relationship.  But in any event,
18  you know, to the extent that there still is positive
19  communication, I'd urge you to continue with that.  Any
20  requests should be made in the form of a formal motion,
21  whether discovery requests or otherwise.
22          Mr. Pancer, I think it's probably best if you hold
23  off on your motion for dismissal from what I'm hearing
24  because it sounds like there's going to be additional
25  information provided to you.

```
 1          MR. PANCER:  There is, and there's a slim hope that
 2  we'll still work it out, so I'm going to hold off for at
 3  least a week.
 4          THE COURT:  Okay.  Well, we won't give you a
 5  date -- well, we will set a further status date, but we won't
 6  give you a date for a further motion hearing unless you're
 7  actually calling in and scheduling a formal motion date for
 8  dismissal of the --
 9          MR. PANCER:  Well, can we reserve February 20?  We
10  won't file the motions, your Honor, till we've exhausted --
11          THE COURT:  What I'll do is I'll set February 20
12  for a further status date and motion hearing date as well,
13  and let's call it at 1:30 in the afternoon, that's a Friday,
14  and that will be for status and motion hearing.
15          MR. PANCER:  Thank you, your Honor.
16          THE COURT:  Okay.  You're welcome.  Your pending
17  motions are continued to the 20th of February, and time is
18  excludable under the Speedy Trial clock between today and the
19  20th of February.
20      (The proceedings were concluded.)
21
22
23
24
25
```

<u>Certificate of Reporter</u>

I hereby certify that I am a duly appointed, qualified, and acting Official Court Reporter for the United States District Court; that the foregoing is a true and correct transcript of the proceedings had in the mentioned cause on the date or dates listed on the title page of the transcript; and that the format used herein complies with the rules and requirements of the United States Judicial Conference.

Dated _____ at San Diego, California.


/s/ Debra M. Henson   (electronic)
Debra M. Henson
Official Court Reporter