1  David R. Denis (SBN# 193143)
   Law Offices of David R. Denis P.C.
2  707 Wilshire Blvd., Suite 3600
   Los Angeles, CA 90017
3  Tel. (213) 625-0033
   Fax. (213) 625- 8833
4
5  Attorney for Defendant
   Ryan Wedding

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | CR NO. 08-2386-JM |
| Plaintiff, | **DEFENDANT'S NOTICE OF MOTIONS AND MOTIONS *IN LIMINE* TO:** |
| v. | (1) **EXCLUDE EXPERT TESTIMONY;** |
| RYAN WEDDING | (2) **PRECLUDE 404(B) AND 609 EVIDENCE;** |
| Defendants. | (3) **EXCLUDE EVIDENCE OF DEFENDANT'S DEMEANOR AND THE "IMPRESSIONS" OF THE GOVERNMENT WITNESSES;** |
| | (4) **INTERPRETATION OF DRUG CODE WORDS;** |
| | (5) **EVIDENCE OF WEALTH** |
| | (6) **STATEMENT OF CO-DEFENDANTS** |
| | (7) **VOUCHING OF COOPERATING WITNESS** |
| | (8) **COMPEL PRODUCTION OF GRAND JURY TRANSCRIPTS;** |
| | (9) **PROVIDE A SEPARATE COPY OF JURY INSTRUCTIONS TO EACH JUROR;** |
| | *(10)* **ALLOW ATTORNEY-CONDUCTED *VOIR DIRE;*** |
| | (11) **EXCLUDE NARCOTICS FROM THE COURTROOM;** |
| | (12) **PRECLUDE AGENTS FROM TESTIFYING ABOUT "TERRORISM"; AND** |
| | (13) **TESTIFYING WITNESS EXCLUDED FROM COURTROOM** |

TO:    THIS HONORABLE COURT AND TO THE ASSISTANT UNITED STATES ATTORNEY KAREN P. HEWITT , UNITED STATES ATTORNEY; ORLANDO GUTIERREZ, ASSISTANT UNITED STATES ATTORNEY:

PLEASE TAKE NOTICE that, on July 31, 2009 at 1:30 p.m. or as soon thereafter as counsel may be heard, Mr. Wedding, by and through his attorneys, Law Offices of David R. Denis, will ask this Court to enter an order granting the following motions *in limine.*

## MOTIONS

Mr. Wedding, by and through his attorneys, Law Offices of David R. Denis, moves this Court pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes, case law, and local rules for an order to:

(1) Exclude Expert Testimony;

(2) Preclude 404(b) and 609 Evidence;

(3) Exclude Evidence of Defendant's Demeanor and the "Impressions" of the Government Witnesses;

(4) Interpretation of Drug Words;

(5) Evidence Of Wealth;

(6) Statement of Co-Defendants

(7) Vouching of Cooperating Witness

(8) Compel Production of Grand Jury Transcripts;

(9) Provide a Separate Copy of Jury Instructions to Each Juror;

(10) Allow Attorney-Conducted *Voir Dire;*

(11) Exclude Narcotics from the Courtroom;

(12) Preclude Agents from Testifying about "Terrorism"; and

(13) Testifying Witnesses Excluded from Courtroom.

These motions are based upon the instant motions *in limine* and notice of motions *in limine,* the attached statement of facts and memorandum of points and authorities, the files and records in the above-captioned matter, and any and all other materials that may come to this Court's attention prior to or during the hearing of these motions.

DATED: July 10, 2009                    Respectfully submitted,

/s/ David R. Denis

_____
DAVID R. DENIS
Attorney for Defendant

MOTIONS IN LIMINE                                        US v RYAN WEDDING

David R. Denis (SBN# 193143)
Law Offices of David R. Denis P.C.
707 Wilshire Blvd., Suite 3600
Los Angeles, CA 90017
Tel. (213) 625-0033
Fax. (213) 625- 8833

Attorney for Defendant
Ryan Wedding

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>RYAN WEDDING<br><br>　　　　　Defendants. | CR NO. 08-2386-JM<br><br>**STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS**<br><br>DATE: July 31, 2009<br>TIME: 1:30 p.m. |

### I.

### STATEMENT OF THE CASE

Ryan James Wedding is charged by way of indictment with conspiracy to distribute cocaine. He has pled not guilty to all charges. The hearing on the motions *in limine* is scheduled for July 31, 2009 at 1:30 p.m. The trial in this matter is scheduled for August 10, 2009 at 9:00 a.m., before this Court.

//

//

//

**II.**

**(1)     THE COURT SHOULD EXCLUDE EXPERT TESTIMONY**

Mr. Wedding has received expert notice about the chemistry and the sale and value of the drugs, here in the Southern District and Canada. The government intends to offer TWO (2) value experts. One to give the value of the drugs in the Southern District, and another expert to give the value of drugs in Canada. Not to mention (a third expert), perhaps the "expertise" of the case agent.

This was a reverse sting and one(1) kilo was provided by the government, which was recovered by the government. Mr. Wedding has not received expert notice about any other issues, i.e. proposed structure, *modus operandi, or* "unknowing courier" testimony, etc. Because Federal Rule of Criminal Procedure 16(a)(1)(E) requires notice, on that basis alone, any government expert testifying about *any other issue*, the structure of drug trafficking organizations, the *modus operandi of* drug couriers, and the non-existence or rarity off "unknowing couriers" should be excluded since it was not disclosed. As explained below, the expert testimony disclosed should also be excluded pursuant to Federal Rules of Evidence 402 - relevancy; 403 - prejudice to defendant -confusion of the issues - misleading the jury - undue delay waste of time - cumulative presentation of evidence, and 704.

**A. The Court Should Exclude Expert Testimony About the Value of the Narcotics.**

Mr. Wedding objects to any expert testimony about the value of the cocaine seized in this case. First, the disclosure did not specify if the expert(s) will testify of the value of 1 kilo recovered or the hypothetical 24 kilo(s) hypothecated. Either way, such testimony is irrelevant and therefore inadmissible under Rule 402. Even if minimally probative, such evidence should be excluded under Rule 403 because it is unduly prejudicial, not to mention cumulative if two experts testify on the same issue. Moreover, if the government does not introduce value testimony, Mr. Wedding hereby offers to stipulate that the quantity of narcotics in this case is a distributable, not personal use, quantity. This obviates the need for value testimony, and also prohibiting the government from bringing the cocaine (provided by the government) into the courtroom in an attempt to prejudice the jury. See Fed. R. Evid. 403; United States v. Merino-

Balderrama, 146 F.3d 758, 762 (9th Cir. 1998) (In "Old Chief [the Supreme Court] held that a defendant's offer to stipulate to an element of a crime is relevant evidence that must be factored into a district court's analysis under [Federal Rule of Evidence] 403.").

One of the major reasons that the government often seeks to introduce value expert testimony is to prejudice the jury regarding high amounts of "street" value to prejudice the jury. The Federal Rules of Evidence and controlling case law, however, specifically forbid this chain of inference in the form of expert testimony.

Rule 704 provides:
No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Fed. R. Evid. 704.

Ninth Circuit case law holds that this rule applies any time an expert seeks to opine on a defendant's knowledge, willfulness, or other mental state. See United States v. Morales, 108 F.3d 1031, 1036 (9th Cir. 1997) ("[t]he language of Rule 704(b) is perfectly plain. It does not limit its reach to psychiatrists and other mental health experts. Its reach extends to **all expert witnesses**"); United States v. Webb, 115 F.3d 711 (9th Cir. 1997) (holding it impermissible under Rule 704(b) for expert to testify, even in hypothetical form, whether defendant knew of weapons concealed in car.). Indeed, knowledge— the primary contested issue in this trial—is a mental state. Any proposed expert who would opine—directly or indirectly—that Mr. Wedding must have known about any conspiracy testifies to his mental processes or condition. Whatever the form, the government may not use the trappings of "expertise" to bolster speculation regarding Mr. Wedding' alleged knowledge. This testimony is expressly forbidden by Rule 704 and by Ninth Circuit law. Two experts should not be allowed to testify on the same issue, and drug value testimony must not be used to circumvent these established evidentiary rules.

**B.    The Government Should Be Precluded from Eliciting "Structure Testimony" From the Value Expert.**

This specific testimony must be excluded since it was *not disclosed*. There has been no evidence as to structure other than to mention the fictional "Akunduv" DTO. No structure

evidence has been produced. However, if any proposed opinion of "structure testimony" is offered through a value expert, it invites reversible error.

In <u>United States v. Vallejo,</u> 237 F.3d 1008 (9th Cir. 2001), <u>amended,</u> 246 F.3d 1150 (9th Cir. 2001), the Ninth Circuit held that structure testimony is inadmissible in a non-complex, drug smuggling case. As the Court wrote, "[t]o admit this testimony on the issue of knowledge, the only issue in the case, was unfairly prejudicial, and an abuse of discretion under Rule 403." Id. at 1017.

**C.      The Court Should Exclude any Expert Testimony on "Retail Value" Because it is Irrelevant and Highly Prejudicial.**

The government should be precluded from offering evidence of so-called retail value, which may try to come in as "value." There is no evidence that Mr. Wedding is involved in street level sales (or drug dealing other than statements by Shirani); nor is there any evidence that any source of supply here was so involved. Retail value is therefore irrelevant and overly prejudicial. <u>See</u> Fed. R. Evid. 402, 403.

**D.      This Court Should Exclude the Government's Experts Unless it Discloses the Specific Bases of its Experts' Opinions.**

The government has not disclosed the materials any expert might rely on to form his opinions. <u>See United States v. Fort</u>, 472 F.3d 1106, 1121 (9th Cir. 2007); <u>United States v. Grace</u>, 493 F.3d 1119 (9th Cir. 2007). Thus, the proposed testimony should be excluded. Rule 16.

The government must disclose the bases underlying its proposed expert's testimony, Fed. R. Crim. Pro. 16(a)(1)(G), including "written and oral reports, tests, reports, and investigations," as well as "any [other] information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts," Fed. R. Crim. Pro. 16, Advisory Comm. Notes, 1993 Amendment, ¶ 5. In 2007, the Ninth Circuit Court of Appeals reiterated the scope of this discovery requirement in <u>Fort</u>, 472 F.3d at 1121. In that case, the Ninth Circuit held that "materials on which a proposed expert witness relies [in developing his opinions] must be produced to Defendants in discovery." Id. at 1121. This is so even if the materials would otherwise be protected under the federal rules. Id.

1  This requirement "is intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merits of the expert's testimony through focused cross examination." Fed. R. Crim. Pro. 16, Advisory Comm. Notes, 1993 Amendment, ¶ 1. The rule has the additional benefit of providing counsel with the substantive information necessary to conduct a thorough and useful Daubert/Kumho/Rule 702 inquiry, which, in turn, assists the Court in performing its "gate-keeping" function. Finally, the rule safeguards a defendant's Fifth and Sixth Amendment rights to a fair trial and meaningful cross-examination, U.S. Const. Amends. V, VI—rights that would otherwise be compromised. See United States v. Zanfordino, 833 F. Supp. 429, 432-33 (S.D.N.Y. 1993) (granting the defense's request for discovery regarding the basis of the expert's testimony and holding that a cross examination conducted without that information implicates due process and the Confrontation Clause: "If an expert is testifying based in part on undisclosed sources of information, cross-examination vouchsafed by that Clause would be unduly restricted.").

Here, any proposed experts would rely upon materials not yet produced to the defense, including reports and various reference materials. Thus, the bases of proposed experts' opinions—the "materials on which [the] proposed expert witness relie[d] [in developing his opinions]," Fort 472 F.3d at 1121—are completely unknown to the defense. All of this information must be produced otherwise the opinion must be excluded. A "value chart" has not been provided in discovery as claimed by the government.

Often as here, the government's expert "disclosure" is no more than a generalized invocation of its witness' experience. The actual sources of information are not produced to the defense. "If an expert is testifying based in part on undisclosed sources of information, cross-examination vouchsafed by [the Confrontation] Clause would be unduly restricted." Zanfordino, 833 F. Supp. at 432. Mr. Wedding' right to confront and cross examine the witnesses, guaranteed by the Sixth Amendment and effectuated by the discovery rules, will not merely be "unduly restricted" absent disclosure of the bases of the opinions, it will be eviscerated. Because trial is fast approaching, and no discovery has been provided, any experts the government proposes should be excluded. If the Court does not compel complete discovery or exclude this testimony

altogether, Mr. Wedding' rights under Rule 16, <u>Daubert</u>, <u>Kumho,</u> Rule 702, and the Fifth and Sixth Amendments will be violated.[1]

In the event the Court permits the government to introduce expert testimony, the defense respectfully requests the opportunity to *voir dire* the experts out of the presence of the jury or at a pre-trial hearing.

### III.
### (2)   THIS COURT SHOULD PRECLUDE THE ADMISSION OF 404(B) AND 609 EVIDENCE

Rule 404(b) requires that the government provide "reasonable notice in advance of trial" of any evidence of "other crimes, wrongs, or acts" it plans to introduce. Fed. R. Evid. 404(b). The notice requirement is triggered when timely requested by the defendant. <u>United States</u> v. <u>Vega,</u> 188 F.3d 1150,1154 (9th Cir. 1999). Under Rule 609, evidence of prior convictions are usually admissible only under certain circumstances and in the discretion of the court, as well. Here, Mr. Wedding timely requested notice of proposed Rule 404(b) and Rule 609 evidence in his discovery requests to the government. There are no criminal arrests or convictions.

**A. "Other Bad Act" Evidence under FRE 404(b)**

The defense has received a letter from the government in response to a request for disclosures of 404(b) evidence. The letter is very general, indicating that "the Government is aware that your client previously shipped cash currency from Canada to the United States utilizing the transfer services of co-defendant Hassan Shirani." Apparently, this was obtained from (perjured) proffer sessions. It goes on to say he: "did this on more than one occasion… your client did this on more than one occasion." "Moreover, your client indicated that the purpose of such cash currency transfers was to facilitate the acquisition, transportation and distribution of narcotics acquired in Southern California," and for purposes of showing absence of mistake or accident, motive, etc. It is the Defendant's position that this 404(b)/609

---

[1] The government must identity when or where any of its proposed experts have testified. The transcripts are often produced to the defense by the government.  This was not done here.

uncorroborated disclosures is not adequate and that the government has not provided a basis for establishing the admissibility of "bad act" evidence. There is no prior arrest or criminal conviction alleged against Mr. Wedding. These accusations are coming from the cooperating co-defendant who is seeking to receive 5k1 consideration how ever he can get it.

The general rule is that "[e]ividence of prior criminal conduct is not admissible to show that the defendant has a 'bad character' and is therefore likely to have committed the crime charged." *United States v. Bailleaux,* 685 F.2d 1105, 1109 (9th Cir. 1982). The first sentence of Rule 404(b) reaffirms this principle, providing that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person *in* order to show that he acted in conformity therewith.

Rule 404(b) goes on, however, to say that such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Notwithstanding, the use of such evidence "must be narrowly circumscribed and limited." *United States v. Bailleaux ,* 685 F.2d at 1109. The court explains why:

> Courts must be extremely careful to guard against the danger that defendants will be convicted because they have previously committed a serious criminal offense rather than because the Government has introduced evidence sufficient to prove beyond a reasonable doubt that they are guilty of the offense for which they are being tried. This danger exists whenever a jury is advised of the fact of a prior conviction, or evidence relating to earlier criminal conduct is admitted. *United States v. Bailleaux,* 685 F.2d at 1109.

Other courts are in agreement. "Our judicial tradition has long barred the introduction of evidence of prior misconduct to prove that an accused was likely as a matter of disposition to have committed the offense for which he or she is on trial." *United States v. Daniels,* 770 F.2d 1111, 1115-1116 (D.C. Cir. 1985). The court must be cautious and consider the "source."

"The exclusion of bad acts evidence is founded not on a belief that the evidence is irrelevant, but rather on a fear that juries will tend to give it excessive weight, and on a fundamental sense that no one should be convicted of a crime based on his or her previous misdeeds." *United States v. Daniels,* 770 F.2d 1116.

"Evidence of a prior crime is always . . . prejudicial to a defendant. It diverts the attention of the jury from the question of the defendant's responsibility for the crime charged to the

improper issue of his bad character." *United States v. Daniels,* 770 F.2d at 116 (quoting *United States v. James,* 555 F.2d 992, 1000 (D.C. Cir. 1977)).

To determine whether evidence is admissible under Rule 404(b), the Ninth Circuit has fashioned a four-part test:

1. Proof of the other crime must be sufficient to allow the jury to find that the defendant was the person who committed the act;

2. The prior criminal conduct must not be too remote in time from the commission of the crime charged;

3. The prior criminal conduct must, in some cases, be similar to the offense charged; and

4. The prior conduct must be introduced to prove an element of the charged offense that is a material issue in the case. *United States v. Miller, 874* F.2d 1255, 1268 *(*9th Cir. 1989).

Unfair prejudice results from an aspect of the evidence other than its tendency to make the existence of a material fact more or less probable. *United States v. Bailleaux, 685 F.2d at 1111.* These aspects make convictions more likely because they provoke an emotional response in the jury or otherwise tend to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged. *United States v. Bailleaux,* 685 F.2d at 1111.

"[E]ven if all four of the conditions are met, the evidence may still be excluded under Rule 403 on the grounds that its prejudicial effect outweighs its probative value." *United States v. Miller, 874* F.2d at 1268. "When the effect on the jury of the non-probative aspect of the evidence is likely to be substantially greater than the effect of the probative aspect, the evidence should be excluded.. .." *United States v. Bailleaux, 685* F.2d at 1111.

The court must remember these alleged "bad acts" are coming solely from a cooperating witness trying to receive 5k1 credit.

There is no presumption that other-crimes evidence is admissible; the burden of establishing the prerequisites to admissibility rests with the government. *See, United States v. Manafzadeh,* 592 F.2d 81, 86 *(*2nd Cir. 1979) ("[C]aution and judgment are called for...

Otherwise ... the accused might be convicted because of his participation in the [alleged] other crimes rather than because he is guilty beyond a reasonable doubt of the crime alleged").

The admissibility of evidence of uncharged misconduct would certainly have a major impact upon Ryan Wedding's trial strategy. "[E]vidence that extends beyond the bounds of discovery can materially alter defense strategy in a way that makes the presentation of an effective defense impossible." *United States* v. *Narciso,* 446 F.Supp. 252, 318 (E.D.Mich. 1977). Moreover, raising this issue pretrial and *giving* Ryan Wedding a reasonable opportunity to argue the admissibility of this evidence outside the presence of the jury will assist the court in making an informed decision on this issue.

Notice of the specific part of Rule 404(b) upon which the government is relying for the admission of said evidence is also requested.  The more detailed disclosure requested by this motion is intended to provide Ryan Wedding with the opportunity to prepare a meaningful defense and to avoid unfair surprise. The granting of this motion will impose no hardship or disadvantage on the government, but will promote the fair and efficient administration of justice. Ryan Wedding therefore respectfully requests the Court to grant his motion.

In the alternative, Mr. Wedding demands further notice forthwith of any and all evidence the government intends to introduce under Rule 609 or 404(b), along with a statement of the alleged substantive basis for admission of such evidence.

Finally, the court is requested to hold a hearing to review all such evidence in limine and to issue a preliminary ruling on its admissibility in light of the evidentiary exclusions imposed by the following Federal Rules of Evidence: 402 - relevancy; 403 - prejudice to defendant - confusion of the issues - misleading the jury - undue delay waste of time - cumulative presentation of evidence; 404(a) - evidence of character for the purpose of proving action in conformity therewith; 602 - personal knowledge; 608(b) - specific instances of conduct for the purpose of attacking or supporting credibility; 802 - hearsay.

///

///

IV.

**(3)   THIS COURT SHOULD EXCLUDE EVIDENCE OF DEFENDANT'S DEMEANOR AND THE "IMPRESSIONS" OF THE GOVERNMENT WITNESSES**

Thus far in discovery or in the discussions with the government there has been conversation or allegation regarding the demeanor of Mr. Wedding when he was arrested. However, it has been this counsel's experience that the government will sometimes resort to these "made-up" and irrelevant observations made regarding the defendant. Although false, a government witnesses may opine that Mr. Wedding was nervous when he interacted with agents after he was arrested or otherwise comment on his alleged demeanor. The defense files this motion to prevent the government's introducing this or any other demeanor evidence at trial.

**A.   Such Evidence Should Be Precluded Under Federal Rule of Evidence 403 Because Testimony That Someone Was "Nervous" Is Irrelevant and Overly Prejudicial.**

Rule 403 allows the Court to exclude relevant evidence if the "[p]robative value is substantially outweighed by danger of unfair prejudice." Lay witness testimony regarding nervousness, absent some prior knowledge of the defendant, has minimal, if any, relevance. United States v. Wald, 216 F.3d 1222, 1227 (10th Cir. 2000) *(en banc)* (evidence of nervousness "is of limited significance"[,] "particularly when [the agent] had no prior acquaintance with the [defendant]."); United States v. Fernandez, 18 F.3d 874, 879 (10th Cir.1994) ("We have repeatedly held that nervousness is of limited significance in determining reasonable suspicion and that the government's repetitive reliance on the nervousness.. . must be treated with caution"); see also Gall v. Parker, 231 F.3d 265, 292 (6th Cir. 2000) (testimony that Gall seemed "nice [and] normal" and "not nervous" error because—"we have long been skeptical of such lay testimony"); United States v. Burks, 547 F.2d 968, 970 (6th Cir. 1976) (stating that lay testimony that defendant did not appear "abnormal" by persons "who had very limited opportunity to observe" him had little value), rev'd on other grounds, 437 U.S. 1, 98 S. Ct. 2141 (1978); United States v. Smith, 437 F.2d 538, 540-41 (6th Cir. 1970) (lay testimony as to mental state lacks probative value when a witness' "direct knowledge of the defendant is brief and superficial.").[2]

---

[2] In both Gall and Smith, mental state was the defense, and it was deemed error to have lay witnesses, without prior knowledge of the

The reasoning underlying the minimal significance accorded to "nervousness" is that courts recognize that "nervousness" has both an innocent and a guilty explanation because people confronted with law enforcement often exhibit signs of nervousness, without having done anything wrong. See, e.g., ChavezValenzuela, 268 F.3d at 725 ("Encounters with police are necessarily stressful for law-abiders and criminals alike"); United States v. Fuentes-Cariaga, 209 F.3d 1140, 1142 (9th Cir. 2000) (recognizing that "drivers stopped at the border (or anywhere else) can be nervous for many reasons, one being a natural unease when confronted by an authority figure and another being fear of getting caught with contraband the person knows he is carrying"); accord Wald, 208 F.3d at 907 (it is not uncommon for most citizens, even innocent ones, to exhibit signs of "innocuous" nervousness when confronted by a law enforcement); Fernandez, 18 F.3d at 879 (same).

It is well-established that jurors will assign undue weight to a law enforcement officer's testimony that an individual was "nervous" and equate nervous behavior with suspicious behavior. See, e.g., United States v. Gutierrez, 995 F.2d 169, 172 (9th Cir. 1993) (testimony of law enforcement officers 'often carries an aura of special reliability and trustworthiness,'") (quoting United States v. Espinosa, 827 F.2d 604, 613 (9th Cir. 1987)). It is also true that, as is previously recognized, testimony that someone is "nervous" in the presence of law enforcement, is ambiguous. For these reasons, evidence that someone was "nervous" should fall in the same category as evidence that an individual remained silent when confronted with law enforcement accusation. That silence evidence, apart from any constitutional protection, is also inadmissible pursuant to Fed. R. of Evid. 403. United States v. Hale, 422 U.S. 171 (1975). Thus, any slight probative value which could exist is insufficient to justify its admission.

**B.    Admission of Nervousness Testimony Violates Rules 701 & 704(b).**

---

defendant, opine that he appeared "not nervous," Gall, 231 F.3d at 292, or that "he did not appear abnormal," Smith, 437 F.2d at 540. Similarly, here, where a distinct mental state, knowledge, is the determinative issue, permitting witnesses without expertise and with no prior knowledge of Mr. Wedding to testify to the converse—that is, that he was nervous—is equally erroneous.

Admission of demeanor evidence should be excluded if it is couched in terms of a law enforcement witness' personal opinion about Mr. Wedding' behavior, i.e., "he was nervous." An inspector or agent's personal opinion is irrelevant and such opinion testimony based on no prior knowledge of the defendant and upon a very limited observation opportunity, violates Rule 701. Rule 701 provides that a lay witness can only testify to opinions or inferences that are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or to the determination of a fact in issue and (c) not based on scientific, technical, or other specialized knowledge within the scope of **Rule** 702. See also Gonzalez-Rivera v. INS, 22 F.3d 1441, 1447 (9th Cir. 1994) (holding that an INS agent's testimony at a suppression hearing that an individual was nervous must be disregarded because it was not based upon "reliable, objective evidence.").

4.      **INTERPRETATION OF DRUG CODE WORDS**.

The defendant is concerned that the government may try to elicit testimony from one or more law enforcement officers, explaining the meaning of purported "code words" that were used by the defendants in this case. The government has not made an expert witness disclosure on this matter. Because code word testimony is expert testimony (see, e.g., United States v. Hermanek, 289 F.3d 1076, 1090-93 (9th Cir. 2002)), the lack of disclosure requires exclusion under FRCrP 16.

With respect to the substance of any future disclosure, the defense would note that, to be reliable, expert testimony about the meaning of code words must be based upon the witness's experiences outside of the instant investigation. Hermanek at 1093; United States v. Freeman, 498 F.3d 893, 903-4 (9th Cir. 2007). In other words, the witness should be prohibited from testifying as to new code words that he or she was not familiar with prior to the instant case, unless the witness can establish a reliable methodology for how the witness is able to interpret words not previously-encountered. Hermanek at 1094-96. Furthermore, the scope of any expert testimony should be limited to interpreting those words or phrases that otherwise would not be

clear to the jury. "[T]he interpretation of *clear* statements is not permissible, and is barred by the helpfulness requirement of both Fed.R.Evid 701 and Fed.R. Evid. 702." Freeman at 905, quoting United States v. Dicker, 853 F.2d 1103, 1109 (3d Cir. 1988)(emphasis in original).

Should the government be able to establish a reliable methodology for its proposed expert testimony, the defense would object to the use of a percipient witness as an expert. The use of a lay witness as an expert is fraught with problems. Freeman at 903-904. There is a danger that a witness with dual roles as both an expert and a percipient witness will receive "unmerited credibility" for his or her lay testimony. Id. at 903. Although the court can instruct the jury about a witness's different roles, the line can often be hard to draw. Id. Furthermore, experts are allowed to rely on otherwise inadmissible evidence for their opinions, whereas lay witnesses are not. Id. at 905. Should a dual-role expert be sloppy in segregating his or her expert and lay testimony, there is a danger that the testimony before the jury will be based upon improper evidence, such as hearsay. Id. at 903-904. This danger not only raises evidentiary problems, but also violates the defendant's constitutional right to confront witnesses. Id. at 903.

## 5. EVIDENCE OF WEALTH

Evidence of unexplained wealth can be probative of the fact that the defendant was involved in profitable illegal activities. However, in order to present evidence regarding wealth, the prosecution must also produce evidence showing that the wealth was not derived from legitimate sources. See United States v. Penny, 60 F.3d 1257, 1263 (7th Cir. 1995). Furthermore, the government must also show that the defendant's wealth was acquired during the period in which he was alleged to be involved in the offense charged in the indictment. Id. The defense objects to any introduction of evidence regarding Defendant's wealth unless the government can establish, outside the presence of the jury, that the foregoing standard has been met.

### A. Seized Watch

During the arrest of Mr. Wedding, the government seized a Breitling® watch. It is unclear what the relevancy of the watch is to the allegation in the indictment and is not relevant to the charged conspiracy. *See* Fed. R. Evid. 401, Advisory Committee Note ("Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case"); Fed. R. Evid. 402 (Rule 402 requires the exclusion of irrelevant evidence). The introduction of irrelevant evidence of an expensive watch will needlessly prejudice the defense and will inevitably confuse the jury. *See McKinney v. Rees*, 993 F.2d 1378, 1380 (9th Cir. 1993) (holding that "[i]rrelevant evidence may merely be a waste of time, may confuse the jury, or may cause serious prejudice to the defense"). Evidence of the watch should be excluded since it is directed at showing Mr. Wedding's wealth.

Additionally, even if the government can articulate some tenuous link between the watch and the charged conspiracy, Rule 403 permits the exclusion of relevant evidence when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *see, e.g., Huddleston*, 485 U.S. at 688. Here, the probative value of this evidence is substantially outweighed by the danger of unfair prejudice to Mr. Wedding. It is soley intended to show Mr. Wedding has money. The introduction of this evidence would undoubtedly confuse or mislead the jury to draw an improper inference of illegality or impropriety – when none exists. Further, this evidence would cause unnecessary delays, waste time, and present needless cumulative evidence. Thus, the Court should exclude evidence of Mr. Wedding's watch.

### 6. STATEMENTS BY CO-DEFENDANTS

Under the Sixth Amendment to the U.S. Constitution, the Defendant has the right to confront all witnesses against him. Should his co-defendants transcripts be used, the Defendant would be unable to question or cross-examine the statements that the co-defendants have made. Accordingly, Mr. Wedding asks that these statements be excluded or admitted from any trial

against him. See Bruton v. United States, 391 U.S. 123 (1968). A separate motions is being submitted with the present motion expanding on the request.

7. **VOUCHING BY COOPERATING WITNESSES**

In the instant case, it appears that the government intends to call a witness who is cooperating with the government pursuant to the terms of a plea agreement. The defense objects to the government eliciting any testimony from the witness, indicating that the witness is required by his plea agreement to tell the truth or that the witness will be penalized if he does not tell the truth. Such testimony constitutes prosecutorial vouching and, therefore, is inadmissible. United States v. Brooks, 508 F.3d 1205, 1209-1210 (9th Cir. 2007).

**(8) THIS COURT SHOULD COMPEL PRODUCTION OF THE GRAND JURY TRANSCRIPTS**

The court ordered disclosure for early July. This was to include grand jury transcripts of any cooperating witness or government witness that will testify at trial. The government has not done so and any witness that testified for the grand jury that the government plans to call should be excluded. Fed. R. Crim. P. 26.2(e). There is a particularized need in this case if a witness who testified before the grand jury will also testify at the trial of Mr. Wedding. The government must produce a transcript of a witness' testimony before the grand jury following the direct examination of the witness at trial. 18 U.S.C. § 3500; Dennis v. United States, 384 U.S. 855 (1966); Fed. R. Crim. P. 26.2(f)(3) or order of the Court. As the Court Ordered, the defense requests that the government make such transcripts available in advance of trial to facilitate the orderly presentation of evidence and to remove any need for a recess in the proceedings for defense counsel to examine the statement pursuant to Federal Rule of Criminal Procedure 26.2(d). If not, the witness testimony should be excluded. Fed. R. Crim. P. 26.2(e).

Furthermore, to the extent that any of the grand jury testimony in this case is in any way inconsistent with the testimony adduced at trial, the grand jury testimony constitutes exculpatory impeachment evidence. See Giglio v. United States, 405 U.S. 150 (1972). As discussed above, such evidence would be admissible as an adoptive admission pursuant to Rule 80 1(d)(2).

### (9) THIS COURT SHOULD ALLOW EACH JUROR TO HAVE A SEPARATE COPY OF THE APPROVED JURY INSTRUCTIONS

Juries consist of lay people who are required to follow the law. Their responsibility becomes more difficult when all twelve jurors have access to only one copy of the instructions. Often, each juror does not have an opportunity to even read or understand the critical instructions. Consequently, jurors fail to understand the government's burden of proving a case beyond a reasonable doubt and the defendant's constitutional right not to testify and present evidence in his own defense.

In this case, there are numerous elements the government must prove to convict Mr. Wedding. Although this Court will instruct the jury on each of these elements, each juror also should be provided a written copy of the jury instructions, so that each juror may properly, effectively, and efficiently perform his or her function of determining whether the government has proven *each* element beyond a reasonable doubt.[3]

### (10) DEFENSE COUNSEL SHOULD HAVE THE OPPORTUNITY TO *VOIR DIRE* THE JURY

Pursuant to the Fifth and Sixth Amendments and Federal Rule of Criminal Procedure 24(a), Mr. Wedding requests that his defense counsel have the opportunity to personally *voir dire* the prospective jury members. Individual *voir dire* assists defense counsel in providing effective assistance of counsel, helps assure that Mr. Wedding has an impartial and qualified jury, and assists Mr. Wedding in the intelligent exercise of peremptory challenges. See Rosales-Lopez v. United States, 451 U.S. 182, 187 (1981) (holding that "lack of adequate *voir dire* impairs the defendant's right to exercise peremptory challenges where provided by statute or rule, as it is in the federal courts"); Paine v. City of Lompoc, 160 F.3d 562, 564 (9th Cir. 1998) (stating that "*voir dire* ought to be adequate to assure an impartial jury, by enabling the parties intelligently to exercise their challenges"); Darbin v. Nourse, 664 F.2d 1109,

---

[3] Mr. Wedding is willing to pay the costs for the additional copies of the jury instructions. Defense counsel is willing to make the copies, as well.

1113 (9th Cir. 1981) ([A] *voir dire* examination must be conducted in a manner that allows the parties to effectively and intelligently exercise their right to peremptory challenges and challenges for cause." (Footnote omitted.)). Accordingly, this Court should allow defense counsel the opportunity to *voir dire* the prospective jury.

### (11) THE COURT SHOULD EXCLUDE THE NARCOTICS FROM THE COURTROOM

The government may intend to present to the jury at trial the narcotics found in the car Mr. Wedding was driving. This visual display of serious narcotics, even if marginally relevant, is unduly prejudicial to Mr. Wedding. See Fed. R. Evid. 403. The narcotics' presence is needless, cumulative, irrelevant, and stirs the emotions of the jury. Accordingly, it is unduly prejudicial to Mr. Wedding and should be excluded. See Fed. R. Evid. 401, 402 and 403.

### (12) THIS COURT SHOULD PRECLUDE AGENTS FROM TESTIFYING ABOUT "TERRORISM"

Based on defense counsel's experience, agents who work at the various ports of entry in the Southern District of California have recently taken to explaining to juries---during an explanation of what their job consists of—that their "primary" responsibility is to thwart terrorist attacks against the United States. Mr. Wedding moves to have this line of testimony precluded. This case involves no allegations of terrorist activity. Such testimony is irrelevant and unduly prejudicial. Fed. R. Evid. 402, 403.

**(13) Testifying witnesses should be excluded from the courtroom under FRE 615.**

Mr. Wedding requests that all witnesses be excluded from the courtroom until they are excused from service, pursuant to FRE 615. Should the law enforcement agent chosen by the government to sit at counsel's table during trial be a percipient witness, Mr. Wedding would ask that the case agent's testimony be taken first, so as not to violate the spirit of FRE 615.

**THIS COURT SHOULD GRANT LEAVE TO FILE OTHER MOTIONS**

To the extent that there is outstanding discovery that the government has not yet produced or the interest of fairness or judicial economy otherwise require it, Mr. Wedding requests leave to file further motions *in limine* or orally make such motions as may be necessary.

## XIII.

## CONCLUSION

For the foregoing reasons, Mr. Wedding respectfully requests that the Court grant the above motions *in limine*.

DATED: July 10, 2009                    Respectfully submitted,

/s/ David R. Denis

DAVID R. DENIS
Attorney for Defendant