David R. Denis SBN# 193143
Law Offices of David R. Denis P.C.
707 Wilshire Blvd., Suite 3600
Los Angeles, CA 90017
Tel. (213) 625-0033
Fax. (213) 625-8833

Attorney for Defendant
Ryan Wedding

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CR NO. 08-2386-JM |
| Plaintiff, | **MOTION IN LIMINE TO SUPPRESS EXTRAJUDICIAL STATEMENTS** |
| v. | Honorable Jeffrey T. Miller |
| RYAN WEDDING | DATE:  July 31, 2009 |
| Defendants. | TIME::  1:30 P.M. |

TO THIS HONORABLE COURT AND TO THE ASSISTANT UNITED STATES ATTORNEY: Karen Hewitt, United States Attorney, and Orlando Gutierrez, Assistant United States Attorney.

**PLEASE TAKE NOTICE** that defendant RYAN WEDDING, by and through his attorneys, The Law Offices of David R. Denis, P.C., and David R. Denis, Esq., pursuant to the Fourth Amendment to the Constitution of the United States, and the Court's supervisory powers, will move the Court to exclude certain statements by codefendants as well as defendant's extrajudicial statements.

## I.

## INTRODUCTION AND STATEMENT OF FACTS

The discovery furnished by the Government contains several statements discussed below in Russian and English attributed to the defendants in this case. Without conceding the accuracy of the translation of the Russian and sometimes Farsi statements of the codefendants or that the tape accurately recorded any statements of defendant Wedding, defendant Wedding moves this court to prohibit the introduction of these statements as inflammatory, hearsay outside any exception, or statements of the codefendant which would deny Wedding a fair trial .

Facts concerning statements (as provided by the Government in discovery).

Yuri Trofimov (in his 50's), defendant Ryan Wedding (age 25) – a present and former Canadian Olympian - and his codefendants Michael Krapchan (in his 50's) and Hassan Shirani (age 33) were arrested in San Diego on June 13, 2008. They are charged with conspiracy to possess cocaine with intent to distribute, 21 U.S.C. §§ 841 and 846, and criminal forfeiture, 21 U.S.C. § 853.   In the course of the investigation the government recorded several statements which defendant seeks to exclude. The precise statements are appended to this motion and/or included by reference.

The statements (AS DESCRIBED BY THE GOVERNMENT) may be described as:

1)      All telephone conversations between the Confidential informant CS-1, Akhundov and Krapchan  including but not limited to the one in which they "agreed to travel to San Diego, California on or about June 9, 2008 to purchase 24 kilograms of cocaine from CS-1" (Search warrant affidavit.). Specifically:

a.)       On May 20, 2008, over a recorded telephone conversation between CS-1 and KRAPCHAN, KRAPCHAN told CS-1 that they [KRAPCHAN and AKHUNDOV] distributed approximately "twenty kilos a week." KRAPCHAN also stated that they [KRAPCHAN and AKHUNDOV] were "looking at 24" [wanting to buy 24 kilograms of cocaine]. CS-1 assured KRAPCHAN that the cocaine was, "100% Columbian." Ultimately KRAPCHAN and AKHUNDOV

agreed to travel to San Diego, California on or about June 9, 2008 to purchase 24 kilograms of cocaine from CS-1.

    b.)     On June 3, 2008, over a recorded conversation between KRAPCHAN and CS-1, KRAPCHAN confirmed that the order was for 24 kilograms and that he [KRAPCHAN] would like the deal to occur two kilograms at a time. Again, on June 5, 2008, KRAPCHAN again confirmed the order was for "24." During this call, KRAPCHAN again articulated his desire to purchase the cocaine in several smaller transfers, suggesting "5,5,5,5,4." On the same day, over two separate recorded conversations, KRAPCHAN confirmed that the final order would be for "24."

2)    On June 7, 2008, over a recorded conversation between KRAPCHAN and CS-1, KRAPCHAN told CS-1 that he [KRAPCHAN ] will be in San Diego with two other individuals; a "Canadian athlete" and an "Iranian." KRAPCHAN explained to CS-1 that the money will be in Los Angeles and that the other two individuals would "stay in a different hotel room."

3)    On June 8, 2008, over a recorded conversation between KRAPCHAN and CS-1, KRAPCHAN told CS-1 that the aforementioned Canadian athlete and the Iranian must fly into Los Angeles because that is where the money is located.

4)    The June 9, 2008 statement after Krapchan arrived in San Diego and told CS-1 that Akhundov would not be present to complete the previously negotiated transaction. Rather, and as detailed below, CS-1 would meet only with Krapchan, Hassan Shirani ("Iranian") and Ryan Wedding ("Canadian").

5)    The  June 10, 2008 meeting between CS-1 and Krapchan after they picked up Shirani and Wedding at Los Angeles International Airport after they had arrived from Canada. According to the Government,  Krapchan told CS-1 in a recorded meeting that Shirani was the source of supply of the money.

6)    The statement during the meeting on June 10, 2008, when Shirani also informed CS-1 that the buy-money was not currently in San Diego and that they  would

have to travel to Los Angeles to retrieve the necessary funds. Wedding at one point stated that they would first need to get the "paper" before any transaction would occur. WEDDING explained that if they had known that the "deal" would occur on that day they would have arrived a few days earlier. SHIRANI stated that the money was in Los Angeles waiting for "us", but that they just had to pick it up. WEDDING then stated, "Obviously, I didn't put "it" [Money] in my [unintelligible expletive] suitcase." WEDDING also stated that their intention was to "grab one" and "have a look at it . . . and grab the rest of them later." SHIRANI subsequently stated that "[W]e cannot carry money over the border" and stated that they had to get the money to Los Angels before they arrived in Los Angeles. Following this initial meeting on June 10, 2008, CS-1 and Krapchan dropped Shirani and Wedding off at a Mariott Hotel near the airport; Shirani and Wedding then got into a taxi cab and left the area while Krapchan and CS-1 returned to San Diego.

7)   On June 11, 2008, during a recorded telephone conversation between SHIRANI and CS-1, SHIRANI described how he intended the pending drug transaction to occur. SHIRANI stated that he would give CS-1 money for "two". SHIRANI explained that once the transfer for "two" was completed then they would do another "two." SHIRANI then stated that the first transfer would be for one "car" so that he [SHIRANI] can inspect the "car" and see if it met his expectations.

8)   On June 13, 2008, FBI agents observed KRAPCHAN, SHIRANI, and WEDDING arrive together at a San Diego Hampton Inn hotel while driving in a 2008 Toyota Prius (Cal Lic. # 6DCW983). This vehicle was rented by WEDDING. KRAPCHAN, SHIRANI and WEDDING entered the hotel together. A short time later, using the aforementioned Toyota, Prius, KRAPCHAN left the San Diego Hampton Inn Hotel and traveled alone to a predetermined location where the previously negotiated drug transaction was to

occur. Upon arrival, CS-1 met with KRAPCHAN, whereupon KRAPCHAN exchanged seventeen-thousand dollars for one kilogram of cocaine. After the exchange took place, CS-1 asked KRAPCHAN to call and inform SHIRANI that the exchange did, in fact, take place as previously negotiated. Using his cellular telephone, KRAPCHAN placed a call to SHIRANI and stated that he [KRAPCHAN]had in fact received the "cocaine" from CS-1. After making this telephone call, KRAPCHAN was placed under arrest.

## II.

**WHILE THE STATEMENTS ARE NOT HEARSAY AND ARE ARGUABLY ADMISSIBLE AS STATEMENTS OF CONSPIRATORS IF OFFERED AGAINST DEFENDANT WEDDING,  THEY ARE NEVERTHELESS EXCLUDABLE UNDER CORE PRINCIPLES OF EVIDENCE LAW INTENDED TO PROTECT A DEFENDANTS FIFTH AND SIXTH AMENDMENT RIGHTS.**

**A.    THE LEGAL STANDARD**

While statements of a coconspirator are non-testimonial and therefore not excludable hearsay under *Crawford v. Washington,* 541 U.S. 36, 56, they are not for that reason necessarily admissible.  Before the Government can introduce alleged coconspirator statements, it must prove by a preponderance of the evidence that 1) there was a conspiracy between the declarant and defendant and 2) that the statement was made in the course of and in furtherance of the conspiracy. (*Bourjailly v. United States* 438 U.S. 171 (1987).

**B.    THE STATEMENTS ARE EXCLUDABLE BECAUSE THE GOVERNMENT CANNOT MEET ITS THRESHHOLD BURDEN THAT DEFENDANT WAS THE MEMBER OF ANY CONSPIRACY STILL LESS ONE INVOLVING THE CODEFENDANTS AND THE CS-1**

Based on the search warrant affidavit defendant Wedding believes that the Government will try to show the existence of a drug conspiracy run by Elmar Akhundov, the leader of the "Akhundov drug trafficking organization ("Akhundov DTO"). The Akhundov DTO is based in Vancouver, Canada.  And based on this investigation, that

Michael Krapchan ("Krapchan") is a member of the Akhundov DTO who has participated in DTO negotiations for the purchase of large quantities of cocaine. It will also attempt to show that Hassan Shirani and Ryan Wedding are DTO associates who participated with Krapchan in a purchase of cocaine from an FBI confidential source in San Diego.

However, the government has already *admitted*, that there is no "Akhundov DTO"; it did not and does not exist. The Government created a fiction by and through its investigation of Mr. Krapchan.

*Excerpts of official transcripts of hearing December 19, 2008, page 15:11-16:6:*

MR. PANCER:
…Just one final matter. The government has told me, informed me -- and I'll just make a record of it -- that as far as the **Akhundov drug organization --** there have been references to that in the *search warrant affidavit* -- that that information started coming as a result of this investigation through Mr. Krapchan, **that there wasn't any prior information about an Akhundov drug organization**, and I think that was the only additional matter.

THE COURT: Okay. Mr. Gutierrez, anything further?

MR. GUTIERREZ: Your Honor, perhaps making a record on informal discussions is not what I'm comfortable with. If counsel wants to make any discovery requests, I would prefer responding and having my response in writing on the record as opposed to documenting without telling me informal discussions regarding representations that were made. So if I can make a record, in that regard I'd say I would no longer wish to have formal -- informal discussions memorialized on the record in this fashion because I haven't had a chance to really -- well, never mind, your Honor. I apologize.

THE COURT: That's okay. I'm glad we've been able to make this progress today.

Wedding, Krapchan and Shirani are therefore not members of any DTO let alone the "Akhundov DTO" since it does not exist.

## C.    THE EVIDENCE SHOWS THAT DEFENDANT WAS NOT A CONSPIRATOR

The evidence, rather than supporting Wedding's participation as a coconspirator, tends to show affirmatively that he is not involved in any conspiracy. It is well established

through the evidence of this case and the excerpts of the transcripts[1], which follow, that Mr. Krapchan purchased 1 kilogram of cocaine for $17,000 from Yuri Trofimov – in a location pre-determined [2] between them, outside the presence of Wedding.

As for Wedding's "responsibility for the money" the Government has provided nothing other than the agent's conclusions that supports that conclusion. That money, which defendant has moved to suppress in other motions pending in this matter, is not obviously and inexorably linked to drug purchases or Wedding. The only statements by defendant Wedding of which defendant has been made aware clearly are susceptible to the interpretation that he is involved tangentially, by his presence at the airport, of some discussions. Further, the Government has not disclosed, he submits because they do not exist, any indication that Wedding, who does not speak Russian or Farsi, knows the language of Russian or Middle Eastern drug dealers.

In fact, evidence provided in discovery shows clearly the opposite is true. With very limited exceptions all of the taped conversations defendant seeks to suppress were entirely in Russian. Wedding's single comment in one of the discussions[3], which may have been recorded as background noise to the telephone call, does not evince knowledge of the true purpose of the conspiracy or his willing participation in it.

Many weeks prior to Wedding's arrival there were initial discussions with Elmar (Akhundov), Krapchan and Yuri for 24 kilograms.  The quantities and people changed many times prior to Wedding's arrival and leading up to the June 13, 2008 deal as demonstrated below. Also, much of the discussions (except at the airport) took place without the presence and knowledge of Mr. Wedding.  As demonstrated in the transcripts, Shirani was responsible for the money and Wedding had nothing to do with the money or their "deal." In fact in one of the recorded conversations Krapchan clarified  ("Brian's") Wedding's

---

[1]  Unless otherwise indicated, the excerpts of transcripts are from "DRAFT" transcripts provided by the Government of recordings made by the informant, Yur Trominov. Final Transcripts will be available and used at the hearing. The transcripts are used to make Defendant showing.

[2]  Again, the government has STILL not provided these recording or transcripts.

[3]  Brief discussion at the airport

Motion in Limine                                                    US v RYAN WEDDING
To Suppress Extrajudicial Statements

1     limited role: "He is not due a share… Hired to work, so speak: accompany, help…Hassan is

2     the main person. Hassan is the main person." (Bates number 1896).

3         At one point, the negotiations had fallen through and everything was postponed for

4     10 days and for another trip.  Krapchan had returned to Los Angeles to meet with Hassan

5     Shirani then with Wedding to fly back to Canada on June 14th the following day. The intent

6     by Krapchan as demonstrated below was to only purchase one *kilo on this trip – as a sample*

7     *- not to get the rest on the "same trip,"* as misrepresented by Agent Kalina.

8         According to the Government, "Pursuant to these negotiations, over recorded

9     telephone conversations with CS-1, <u>Akhundov and Krapchan</u> agreed to travel to San Diego,

10    California on or about June 9, 2008 to purchase <u>24 kilograms of cocaine from CS-1</u>.

11    However, on June 9, 2008, Krapchan arrived in San Diego and told CS-1 that Akhundov

12    would not be present to complete the previously negotiated transaction. Rather, and as

13    detailed below, CS-1 would meet only with Krapchan **and Akhundov DTO associates**

14    **Hassan Shirani ("Shirani") and Ryan Wedding ("Wedding").** On June 10, 2008, CS-1

15    and Krapchan picked up Shirani and Wedding at Los Angeles International Airport after

16    they had arrived from Canada. **Krapchan told CS-1 in a recorded meeting that Shirani**

17    **was the source of supply of the money which the DTO intended to use to purchase the**

18    **previously negotiated amount of cocaine, and that Wedding was "the muscle." (SW**

19    **affidavit.)**

20        Again, previously discussed, Wedding is not an "Akhundov DTO" associate.  Nor is

21    there any reference in the recorded statements concerning his actual role besides

22    accompanying the others. Even he was supposedly the "Muscle" that defeats rather than

23    supports his being "responsible for the money". Also, it is true that following their meeting

24    at the airport there was a conversation with CS-1 and Krapchan where Krapchan explained

25    whose money it was, who was involved in the "deal" and who was "due a share." Contrary

26    to Agent Kalina's affidavit, Krapchan explained that Ryan Wedding was not a "torpedo,"

27    //

28    //

Motion in Limine                                         US v RYAN WEDDING
To Suppress Extrajudicial Statements

which was an interpreter's *guess* that it meant "muscle." In fact, <u>Krapchan told Yuri that</u> <u>Wedding was not any kind of "muscle."</u> This was thoroughly addressed in the defendant's *Frank's* motion.

There was a conversation which took place in the airport with everyone present. Shirani indicated that the money was in Los Angeles not the San Fernando Valley.  Shirani also indicated that they would have to go to Los Angeles to get the money. Contrary to the statements in the affidavit, Wedding after hearing the discussions and arguments (talking from the "hip" – to calm this irate informant) indicated that it would be unrealistic to pick up the "paper" and do everything in four hours.

**D.     DEFENDANT'S STATEMENT AT THE AIRPORT DOES NOT ESTABLISH HIM AS A MEMBER OF THE CONSPIRACY**

**The only recorded statement by defendant  was clearly intended to only calm the others.**

Bates No. 1866-1867  (06/10/08, Call #3)
RW:    Sir, I mean we didn't realize there was six o'clock deadline today.
CHS:   Yes.
…
CHS:   I talk… I talk to my friend… I visit to San Diego… only one day… 2 hours…
          That's my problem. Okay. Okay.
RW:    We didn't know, we didn't know.
CHS:   Okay.
[Pause] [Translator's Note: Hassan is heard briefly, speaking in Farsi in the background]
CHS:   Okay?
HS:     What happened here?
RW:    [UI] Boys raising the stakes.[UI]          (Ryan speaking to Hassan)
CHS:   [OV][SC] We won't have enough time then. Absolutely, for them to go there, but so
          that… Well, okay, they'll call right now…
MK:    Yes, yes, yes [UI] will call him. [UI] Don't pressure them. [UI]
CHS:   No…not at all.
RW:    I mean…I think, part of it is, of course, we understand, we just need a grab on it
          [UI] I mean it's unrealistic for us to be able to …to pick up the paper [PH], calling
          this guy, look at one, okay it, and grab everything, in four hours.
//
//
//
//

Motion in Limine                                                    US v RYAN WEDDING
To Suppress Extrajudicial Statements

1   Ultimately, the KRAPCHAN AND CS-1 agreed to conduct the exchange on June

2   13, 2008." **[4] This statement does not show that RW, that is, Wedding, knew the**

3   **purpose of the conspiracy, shared in it, knew it was unlawful, or anything other than**

4   **that the people he was traveling with had told him some money had to be picked up**

5   **but had not even told him when or where or the urgency of the matter. Clearly these**

6   **were not the words of a conspirator.**

7   In a recorded conversation phone conversation with CS-1 and Shirani, Shirani

8   indicated that he wanted to see one, and if that had worked out he would have purchased

9   two and then two more. There is no discussion if this was to take place on this trip. Also, as

10  previously discussed on June 13, 2008 Krapchan alone completed the transaction for one (1)

11  kilo.

12  Defendant was not present at the exchange---which is expressly contrary to his even

13  being the muscle" as well as "in charge of the money".

14  As indicated above, the affidavit for the search warrant so shows that the

15  government cannot meet its burden for introduction of the statements against Wedding as

16  evidence of his participation in the alleged conspiracy or for any other purpose.

17  **E.  THE STATEMENTS AT ISSUE SHOULD BE EXCLUDED AS UNDULY**

18  **PREJUDICIAL**

19  The trial court must exclude evidence, even if relevant, if the probative value of

20  the evidence is substantially outweighed by the danger of unfair prejudice." *United States*

21  *v.Brooke,* 4 F.3d 1480 (9th Cir. 1993); Fed. R. Evid. 403. Moreover, "[w]here the evidence

22  is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's

23  even a modest likelihood of unfair prejudice or a small risk of misleading the jury."

24  *United States v. Hitt,* 981 F.2d 422, 424 (9th Cir. 1992). Here, the statements have no

25  probative value and the risk of prejudice is substantial. Evidence of defendant's attempts

26  to calm down the informant (apparent "hot-head") may mislead the jury into believing he

27  had knowledge of the plans and concerns of the others and that he was in fact involved

28

---

[4]  It should be noted that the recordings of this conversation setting up the predetermined location is
missing or has not been provided. See also section 16 of affidavit.

10

Motion in Limine                                                US v RYAN WEDDING
To Suppress Extrajudicial Statements

with the conspiracy. The other statements, while arguably showing that he was not involved, not only because he did not understand the language may also tend to lead a jury to convict him based upon mere association.

### III.

### <u>CONCLUSION</u>

For the foregoing reasons, defendant Ryan Wedding respectfully requests that this Court exclude all statements made by him or anyone else in furtherance of this alleged conspiracy.

Dated: July 14, 2009                          Respectfully Submitted,

S/ David Denis

_____
DAVID R. DENIS
Attorney for Defendant

1

**PROOF OF SERVICE**

2

I declare that:

3

I am a citizen of the United States and employed in the city of Los Angeles, CA. I am

4

over eighteen years of age and not a party to the action. My business address is 707

5

Wilshire Blvd., Suite 3600, los Angeles, CA 90017.

6

On July 14, 2009, I personally served the following documents:

7

8

**MOTION IN LIMINE TO SUPPRESS EXTRAJUDICIAL STATEMENTS**

9

on the below attorneys by electronic filing:

10

Assistant United States Attorney Orlando Gutierrez

11

Counsel for all co-defendants

12

I declare under penalty of perjury that the foregoing is true and correct, and that this

13

declaration was executed on July 14, 2009 at Los Angles, CA.

14

15

16

17

S/ David Denis

18

_____

DAVID R. DENIS

19

20

21

22

23

24

25

26

27

28

Motion in Limine                                                    US v RYAN WEDDING
To Suppress Extrajudicial Statements