# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br> vs. <br><br> RYAN WEDDING, <br><br> Defendant. | CASE NO. 08cr2386 JM <br><br> ORDER DENYING MOTION TO DISMISS FOR OUTRAGEOUS GOVERNMENT CONDUCT; DENYING MOTION TO SUPPRESS; DENYING MOTION FOR A <u>FRANKS</u> HEARING |

Defendant Ryan Wedding moves to dismiss the indictment for outrageous government conduct, to suppress evidence, and for a <u>Franks</u> hearing. The Government opposes all motions. Having carefully considered the record, moving papers, pertinent authorities, the arguments of counsel, and for the reasons set forth below, all motions are denied.

## BACKGROUND

Defendant Wedding, along with co-defendants Michael Krapchan and Hassan Shirani, is charged in a single count indictment with conspiracy to distribute cocaine in violation of 21 U.S.C. §841(a)(1). The Government identifies the following pertinent background.[1] On January 3, 2007 CS -1 was contacted by Krapchan and informed that he and his associates were looking for someone to launder money and to traffic in

---

[1] The factual assertions are assumed to be true for purposes of these motions only.

cocaine, ecstasy, and ephedrine. Krapchan later introduced CS-1 to Elmer Akhundov. During recorded conversations on January 20, 2007 and August 31, 2007 Krapchan, Akhundov and CS-1 discussed the details of the money laundering and drug distribution.

In early June 2007 recorded conversations reveal that Krapchan and CS-1 confirmed an order for 24 kilos of cocaine. On June 7, 2008 Krapchan told CS-1, in a recorded conversation, that he would be in San Diego with two other individuals, a "Canadian athlete" and an "Iranian." On June 10, 2008 CS-1 met with Krapchan, Shirani, and Wedding. Krapchan introduced Shirani and Wedding as the sources of supply for the buy money. Without the code words, Wedding stated that it was his intention to pick up one kilo of cocaine and have a look at it. Then he would pick up the other kilos of cocaine.

The parties agreed to meet on June 13, 2008 to complete the first transaction for one kilo of cocaine. On that date, FBI agents observed Krapchan, Shirani, and Wedding arrive together at the San Diego Hampton Inn Hotel driving a 2008 Prius. They entered the hotel together and then a short time later Krapchan left in the Prius. Krapchan then drove to the negotiated location to complete the deal. Krapchan paid $17,000 for one kilo of cocaine. After the exchange, CS-1 asked Krapchan to call and inform Shirani and Wedding that the exchange had taken place. Krapchan placed the call and then Agents arrested Krapchan. As Shirani and Wedding were exiting the Hampton Inn, they were arrested.

During the search of the Prius, agents discovered a vehicle rental agreement in the name of Wedding listing Shirani as an additional driver. Agents also discovered a hotel key card for Room 304 at the Comfort Inn and a real estate magazine for the San Fernando Valley area. The Government obtained a search warrant from the Central District of California, based upon Agent Kalina's affidavit, for the motel room. Upon searching Wedding's room No. 304 at the Comfort Inn, agents discovered $100,000 in cash hidden in the hotel room's furniture.

**Motion to Dismiss for Outrageous Government Conduct**

Misconduct on the part of law enforcement agents may be so outrageous that "due process principles would absolutely bar the government from invoking the judicial process to obtain a conviction." United States v. Russell, 411 U.S. 423 , 431-21 (1973). Misconduct violates due process where the conduct violates "fundamental fairness, shocking to the universal sense of justice." Id. As explained in USA v. Bogart, 783 F.2d 1428, 1436 (9th Cir.), vacated on other grounds sub nom., USA v. Wingender, 790 F.2d 802 (9th cir. 1986).

> We have held that law enforcement conduct also becomes constitutionally unacceptable 'where government agents engineer and direct the criminal enterprise from start to finish,' [] or when governmental conduct constitutes "in effect, the generation by police of new crimes merely for the sake of pressing criminal charges against the defendant."

Id. The court also noted that the "precise parameters of such concepts as fundamental fairness and universal sense of justice are probably indefinable. Perhaps because of these very considerable problems of philosophy and semantics, no federal court has defined with any sort of precision the contours of the outrageous conduct defense." Id. at 1435. Bogart also pointed out the distinction between a due process claim for outrageous government conduct, which is determined objectively and without regard to a defendant's predisposition.

Defendant contends that the indictment must be dismissed because (1) the Government was impermissibly involved in the crime; (2) misconduct occurred before the grand jury; (3) the Government has failed to produce CS-1 for an interview; and (4) the Government listened to recorded attorney/client conversations on public telephone lines.

First, the court rejects Defendant's argument that the Government impermissibly created or directed the crime. Here, CS-1 contacted the Government about individuals seeking to launder money and purchase cocaine, among other illegal substances. Pursuant to negotiations with Krapchan and Akhundov, a drug transaction was negotiated. Defendant Wedding voluntary injected himself to the transaction. Prior to June 7, 2008 Wedding had not had any conversations with CS-1 or the Government. On

1  June 7, 2008 Krapchan told CS-1, in a recorded conversation, that he would be in San
2  Diego with two other individuals, a "Canadian athlete" and an "Iranian."  On June 10,
3  2008 CS-1 met with Krapchan, Shirani, and Wedding.  Krapchan introduced Shirani
4  and Wedding as the sources of supply for the buy money.  During these conversations,
5  Wedding made a reference to the drug deal and the transfer of $100,000 in cash.  These
6  circumstances are markedly different from those in Greene v. United States, 454 F.2d
7  783 (9th Cir. 1971).  In Greene , the Government offered to supply the equipment and
8  an operator  for the distilling of spirits.  The government also supplied the raw materials
9  and encouraged the defendants to resume production.  Then, the Government served as
10 the only customer for the illegal spirits.  Unlike Greene, where the Government
11 controlled and directed the enterprise, Wedding and his co-defendants controlled their
12 own destiny.  Accordingly, the court rejects this misconduct argument.

13     Second, Defendant contends that misconduct occurred before the grand jury.
14 Defendant contends that "the government knowingly presented misleading testimony
15 to the grand jury in order to get an indictment as to Mr. Wedding." (Motion at p.24:4-
16 5). Defendant, however, makes nothing more than this conclusory statement in support
17 of his argument.  Consequently, Defendant fails to raise a colorable challenge.  The
18 court also denies Defendant's request for the pretrial production of the Grand Jury
19 transcripts.  The Government represents that it will comply with its discovery
20 obligations under Brady and the Jenks Act.

21     Third, Defendant contends that the Government must produce the CS-1 for an
22 interview.  Here, the Government is under no obligation to produce CS-1 for an
23 interview. The Government represents that CS-1 has declined to voluntarily appear for
24 an interview and that CS-1 will be made available to testify at the time of trial.

25     Finally, Defendant contends that the Government has engaged in misconduct by
26 recording conversations on the public telephone lines at the custodial facility where he
27 is housed.  Defendant argues that the Government recorded conversations between
28 himself and his counsel and that such conduct violated Defendant's right to effective
   assistance of counsel, due process, and equal protection.  Here, the undisputed evidence

reveals that Defendant made the telephone calls on telephones clearly marked as monitored lines. Further, the Government represents that it isolated these records and made the decision not to listen to any of the conversations between Wedding and his counsel. As Defendant had no reasonable expectation of privacy on the monitored lines and he had access to unmonitored telephone lines, there is no basis to dismiss the indictment. Defendant also fails to identify how he was treated any differently than any other inmate or otherwise deprived of due process of law. The court notes that Defendant could have requested to use the attorney line but chose not to.[2]

In sum, the motion to dismiss is denied.[3]

**Motion to Suppress Evidence and Franks Hearing**

Defendant moves to suppress all items seized from Defendant's Comfort Inn hotel room on the ground that the warrant affidavit in support of the search warrant by Agent Brett Kalina contains materially false and misleading representations. In large part, Defendant cites 11 paragraphs of the affidavit and highlights selected portions of the text and argues that the statements are intentionally false and misleading. For example, the following are alleged to be false and misleading: (1) the Akhundov DTO is based in Vancouver, Canada; (2) Defendant is a DTO associate; (3) Defendant and Shirani were responsible for the money for the cocaine transaction; (4) Krapchan told CS-1 in a recorded conversation that Shirani was the source of the money and Defendant "the muscle;" (5) Shirani told CS-1 that he would fund the purchase of a single kilo before any larger amounts were purchased.[4]

In support of these essentially 5 alleged false statements, Defendant argues: statements (1) and (2) - the Akhundov DTO does not exist (evidentiary basis: Attorney

---

[2] While Defendant identifies obstacles to obtaining access to unmonitored telephone lines (a 2-3 day waiting period, calls of limited duration), such a burden, absent a showing of exceptional circumstances, is reasonable and not overly burdensome.

[3] The court declines to address Defendant's allegations of discovery abuse. Such alleged conduct will be discussed in the context of on-going discovery motions.

[4] Defendant actually identifies 9 different misstatements, encompassed within these five broad categories.

Pancer made a statement at a grand jury hearing to the effect that "there wasn't any prior information about an Akhundov drug organization"); statement (3) - the evidence shows that Defendant was to purchase only one kilo of cocaine, and not the rest on the same trip (Defendant cites recorded conversations where the purchase of only one kilo was discussed); statement (4) - in the original language translation, Krapchan actually stated that Wedding was the "torpedo" and that the translator used the word "muscle"; and statement (5) - the conversations don't reveal that the purchase of the other kilos was to occur on the same or different trips. Without these statements, Defendant concludes that there is no probable cause to believe that anything "illegal would be found in the room of Mr. Wedding." (Motion at p.23:13).

In making these arguments, Defendant asks this Court to conduct a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), to determine whether, without the alleged materially false and misleading statements, the affidavit establishes probable cause to believe that relevant evidence would be discovered at the Comfort Inn motel room. Alternatively, Defendant contends that the evidence should be suppressed because the affidavit failed to establish probable cause because it was based on nonspecific statements that contraband would be found at the motel room. Further, Defendant argues that the search warrant was an illegal "general warrant" and the warrant was overbroad.

The Government opposes the motion. Pursuant to Franks, a district court must suppress evidence if the defendant can demonstrate that the application contained intentionally or recklessly false information which was material to the issuing court's finding of probable cause. Meling, 47 F.3d at 1553. A criminal defendant is thus entitled to a hearing to test the veracity of an affidavit supporting the wiretap application upon making a substantial preliminary showing that: (1) the affidavit supporting the wiretap contains intentionally or recklessly false statements; and (2) without the false statements, the affidavit lacks probable cause for issuance of the warrant. United States v. Chesher, 678 F.2d 1353, 1360 (9th Cir. 1982). The Supreme Court explained that requiring the affiant be truthful does not mean "that every fact

recited in the warrant affidavit [must be] necessarily correct." Franks, 438 U.S. at 155-56. The same test applies to omissions. Id.

Here, the court denies the motion because Defendant fails to satisfy the requirements of Franks.

**The First Element, Intentional or Reckless False Statements**

<u>The Existence of the Akhundov DTO</u>

The only evidence cited by Defendant is a single question asked by Michael Panzer. In part, Mr. Panzer stated "that there wasn't any prior information about an Akhundov drug organization." No foundation or context is provided for this question. Accordingly, the evidence does not support a finding of intentional or reckless statements.

<u>Purchase of One versus 24 kilos of cocaine</u>

Defendant concedes that Krapchan and a CS-1 were arranging for the purchase of 24 kilos. However, Defendant argues that he only intended to purchase one kilo. The fact that only one "test" kilo of cocaine was purchased does not undermine the nature of the identified conspiracy to ultimately purchase 24 kilos. This allegation does not support an evidentiary hearing.

<u>Defendant is the Muscle</u>

In the recorded conversation in Russian, the translator stated that the word "torpedo" may refer to muscle. Defendant also cites recorded passages that indicate that the time for the transaction and exact quantities kept changing. There is no evidence to suggest that Agent Kalina provided an intentionally false or reckless statement.

<u>The Cocaine Was to Be Bought On the Same Trip</u>

Defendant contends that the recorded conversations do not reveal whether Defendant intended to purchase one or 24 kilos. The record reveals that discussions were held concerning the purchase of 24 kilos and that other conversations revealed that Defendants intended to purchase one kilo sample. One logical conclusion is that if the cocaine sample provided was worth the purchase price than additional kilos would be

purchased. Accordingly, the evidence does not support a finding of intentional or reckless statements.

In sum, Defendant fails to make a sufficient showing that Agent Kalina intentionally or recklessly included, or omitted, from the affidavit materially false and misleading statements.

**The Second Element**

Defendant also fails to satisfy the second element. A <u>Franks</u> hearing can be denied "if the warrant contains sufficient information to support a finding of probable cause after the false statements are omitted." <u>United States v. Valencia</u>, 24 F.3d 1106, 1108 (9th Cir. 1994). There is probable cause to search if "given all the circumstances" there exists "a fair probability that contraband or evidence of a crime will be found in a particular case." <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983).

The affidavit, without the alleged misstatements, provides adequate circumstances of drug trafficking such that evidence of wrongdoing was likely to be found at the motel room. The affidavit establishes that the Defendants traveled to San Diego pursuant to pre-negotiated plans to purchase cocaine. Whether Defendant Wedding was in fact the muscle, an associate, or member of the Akhundov DTO is largely irrelevant in light of the specific circumstances identified by Agent Kalina in his search warrant affidavit. Accordingly, Defendant has not made a sufficient showing that the affidavit contained intentional or reckless statements or omissions or that the affidavit, even without the challenged, statements, give rise to probable cause.      **h** sum, the court denies the motion to dismiss for outrageous conduct and denies the motion to suppress and for a <u>Franks</u> hearing.

**IT IS SO ORDERED.**

DATED: September 2, 2009

_____
Hon. Jeffrey T. Miller
United States District Judge

cc:     All parties

- 8 -                                       08cr2386